Johnson, J.
The demurrer to the petition raised the question whether a municipal corporation has the power to compel an interurban railroad company, operating its cars by electricity, to light its railway or any portion thereof within the limits of the municipality, and there is no other question in this case.
Defendant in error contends that the ordinance requiring the lighting which is referred to in the petition, was authorized by Section 1536-176, Revised Statutes, while plaintiff in error insists that the section applies only to steam railroads and not to street or interurban railroads. The section referred to provides that when deemed necessary by the council, it shall pass an ordinance requiring the individual or company owning or operating a bridge or railway within its limits, to light such bridge or railway within a specified time. Section 1536-179, Revised Statutes, provides that on failure of the owner or operator to comply with the ordinance within the time fixed the municipality may light the bridge or railway at the expense of the owner or operator. The legislature had enacted the original statute, from which Section 1536-176 was taken, long before the existence of interurban or electric railroads. A considera *233 tion of the course of legislation on the subject, which has been gathered and set forth in the briefs of counsel, discloses that the general assembly has not regarded interurban railroads as being included in the term “railroad,” but that interurban railroads have been classed by the legislature with street railroads.
This court has recognized and enforced that distinction and classification in a number of cases, and has held that statutes as to railroads, do not apply to street railroads unless clearly provided by the statute itself. Massillon Bridge Co. v. Cambria Iron Co., 59 Ohio St., 179; State v. Traction Companies, 64 Ohio St., 272; Cincinnati, Lawrenceburg & Aurora Elec. St. Ry. Co. v. Lohe, Admr., 68 Ohio St., 101; Commissioners v. Traction Co., 75 Ohio St., 548. The construction and operation of interurban railroads are authorized by act of May 17, 1894, 9.1 O. L., 285, being Sections 3443-8 to 3443-13, Revised Statutes. Section 3443-13 provides: “Such companies shall be subject to the same regulations now provided for street railroads, in so far as the same are applicable, and shall have all the powers in so far as they are applicable, that other street railroad companies have.” The subsequent acts of the legislature passed from time to time, since the enactment of the above statute, in reference to many different matters touching the subject, and in which the distinction pointed out has been preserved, sufficiently indicate its satisfaction with that distinction and classification.
Bridge Co. v. Cambria Iron Co., 59 Ohio St., 179, involved the construction of Sections 3207 and 3208, Revised Statutes, relating to the building of *234 railroads and liens for labor and material employed in such building. It was claimed that the word “railroad” included street railroads and that the liens of laborers and material men were a first lien on a street and interurban railroad under the latter section. But it was held that the word “railroad” does not include street railroads, and the court state that interurban street railroads are not regarded by the legislature as being included within the word “railroad.”
State v. Traction Companies, 64 Ohio St., 272, was a contest as to the right of an interurban railway company and a company operating a road on the streets of a city, to enter into a traffic arrangement for the carriage of merchandise for hire, on the street. The court in the opinion remark: “It is well known that it was in response to a general demand for increased traffic facilities between cities and regions surrounding them that the act of May 17, 1894, which is now included in Sections 3443-8 to 3443-13 Revised Statutes, was enacted. In that act railways of this character wherever located, are called street railways.”
Electric Street Ry. Co. v. Lohe, Admr., 68 Ohio St., 101, was an action for negligence of the company by which a man standing on the platform of a moving car was killed. The court observed that the law of negligence, or rather of contributory negligence, of one riding on a platform of a street railroad car is not the same as of one riding on the platform of a steam railroad car, and then remark that interurban railroads are classed by the general assembly as street railroads.
*235 The first proposition of law in the syllabus is: “An interurban electric railroad is classed as a street railroad by the statutes of this state.”
The subject was viewed from still another angle in Commissioners v. Traction Co., 75 Ohio St., 548. There the question arose on the interpretation of the act of April 25, 1904, “to provide how railroad and highway crossings may be constructed.”
It was contended by the commissioners that the word “railroad” in the statute included an interurban railroad. The court held otherwise and pointed out that the various acts of the legislature on the subject of railroads and street railroads, show that in the opinion and intention of the legislature the former term does not include roads of the latter description.
Counsel for defendant in error rely on the case of State v. Cleveland, 83 Ohio St., 61, and the circuit court seems to have adopted the view of defendant in error as to the controlling effect of that case on the question made here.
Defendant, Cleveland, was indicted for throwing a stone at a railroad car and in a second count, for throwing a stone at a street railway car. The proof showed that the car was in fact an interurban car. The statute under which the indictment was found, was originally passed in 1879 and provided that, “Whoever wilfully throws any stone, * * * at any railroad car,” etc.
In 1884 the statute was amended so as to include steam vessels or water craft and also added “at any cable railway car or street railway car.” *236 This court in the syllabus declare: “A statute may include by inference a case not originally contemplated when it deals with a genus within which a new species is brought. Thus a statute making it unlawful to willfully throw a stone at a railroad car includes an interurban or traction railway, although such cars were not known or in use at the time the statute was enacted.” In the opinion it is pointed out that the maxim “expressio unius exclusio alterius” is to be applied only as an aid in arriving at intention and not to defeat the apparent intention, that the statute as originally enacted was broad enough to include any kind of railroad car and that the subsequent enumeration of cable cars and street railway cars was not the addition of new things, but was intended to remove any question as to such cars being within the terms of the statute.
It is to be noted that the thing, which the statute involved in that case, dealt with was the car itself. The railroad car was regarded and interpreted in its ordinary and generic sense, that is. a car which is propelled by some motive power and runs on rails, and which, therefore, would include any species of such cars which might afterward be invented and used. The case referred to is a very recent one, but there is not disclosed in it, any disposition to disregard the distinctions, which the legislature has constantly made, between the different classes of railroads, and which this court •has repeatedly noted and enforced, relating to the organization, taxation and other rights and duties of companies in the different classes. There is *237 some discussion in the briefs of counsel as to the nature of the distinctions between different classes of railways, the manner of their construction and operation and the varying range of their service to the public. Such considerations are of value here, only so far as they may assist, in determining the classification which the legislature has actually made.
In this connection it is proper to note that if a municipal corporation, can by virtue of the section under examination here, compel an interurban railroad to light its tracks within the limits of the municipality, there would appear to be no reason why it could not also compel a street railway to do so, for, as we have shown, interurban and street railways are classed together. It is, of course, well known that electric cars both street and interurban are equipped with lights which give notice of their approach and passage along the street. Under such a condition the utility or advantage of additional lighting is not apparent. In many cities such railways traverse numbers of different streets and the power to shift the burden of lighting them from the city to the company, can only be obtained by legislative enactment.
The legislative power of the state is vested in the general assembly, and a municipal corporation has only such legislative power as is expressly granted or clearly implied. Bloom v. Xenia, 32 Ohio St., 461; Ravenna v. Penna. Co., 45 Ohio St., 118; Townsend v. Circleville, 78 Ohio St., 133.
A full consideration of the history of Section *238 1536-176, Revised Statutes, and of its language, and of the consistent course of legislation on the general subject involved in the inquiry, leads us to hold, that the legislature has not granted to cities and villages the power to compel interurban and street railway companies to light the streets of such villages and cities occupied by their tracks.
For these reasons we conclude that the circuit court erred in reversing the judgment of the court of common pleas and the judgment of the circuit court will be reversed and that of the common pleas court will be affirmed.

Judgment reversed.

Davis, C. J., Spear, Si-iauck, Price and Donahue, JJ., concur.